UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL BARHAM, JOHN CRAWFORD, FREDDIE MOULTRIE, MONICA SMITH, MARK SPRADLEY, PAUL WATKINS, and SEAN WINTZ, ) ) ) ) | Civil No. 07-CV-00853-RMU |
| Plaintiffs, ) | (ECF) |
| ) | |
| v. ) | |
| ) | |
| UBS FINANCIAL SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER TO THE DISTRICT OF MARYLAND**

Pursuant to 28 U.S.C. § 1391(b) and § 1404(a), Plaintiffs Michael Barham, John Crawford, Freddie Moultrie, Monica Smith, Mark Spradley, Paul Watkins and Sean Wintz ("Plaintiffs"), by and through their counsel of record, hereby oppose Defendant UBS Financial Services, Inc.'s ("UBSFS") motion to transfer this case to the District of Maryland. Venue is proper in this District, and Defendant has failed to overcome its heavy burden of establishing that Plaintiffs' choice of forum is inappropriate and that transfer is necessary.

**I.    RELEVANT FACTS**

Plaintiffs are African-American former Financial Advisors or Financial Advisor Trainees (hereinafter "Brokers") of UBS Financial Services, Inc. ("UBSFS"), who are asserting claims of racial discrimination against UBSFS stemming from their employment with UBSFS. See Complaint ("Compl."), at ¶ 1. Three of the Plaintiffs worked as Brokers at UBSFS' branch office in Washington, D.C. ("Washington"), and all of the Plaintiffs worked at a satellite office of the Washington branch in Largo, Maryland. Id. They assert that the

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200  •  Fax 220-1214

1

company discriminated against them by assigning them to a racially segregated office, denying them compensation, career opportunities and professional support comparable to that provided to brokers in UBSFS' predominantly Caucasian branch offices, resulting in their termination or constructive discharge. Id. at ¶¶ 20-42. Plaintiffs allege that the establishment, structure, staffing, operation and closure of the Largo office, and staffing and operation of the Washington office, were discriminatory. Id. Plaintiffs bring their claims under 42 U.S.C. § 1981.

The District of Columbia is a proper venue for Plaintiffs' claims. As set forth more fully below, the decision to open the Largo office was made in Washington. Key decisions regarding the establishment, structure, staffing, operation and closure of the Largo office were made by managers based in Washington. The authorization to hire each of the Plaintiffs occurred in Washington. Furthermore, a number of the Plaintiffs worked for a period of time in Washington. Accordingly, under the venue standards for Section 1981 claims, the Plaintiffs' claims should remain in the District of Columbia.

The facts supporting venue in this District, include the following:

A.    **The decision to open the Largo office**.

Coe Magruder, the Branch Office Manager of UBSFS' Washington, D.C. office,[1] conceived the idea of opening a new office in Prince George's County, Maryland, to among other things, target a "minority population" living in the area. Pavsner Exh. 1 (Coe Magruder ("Magruder") Dep. Trans., at 12:11-14:7)[2]; Pavsner Exh. 3 (William Kennedy ("Kennedy")

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

---

[1]    The Washington office, where Mr. Magruder was based, was located on "K" Street, in Washington, D.C.

[2]    All depositions cited in this memorandum were taken in Cook et al., v. UBS

Dep. Trans., at 56:4-58:25). Mr. Magruder proposed to his supervisors, Raymond McClure and William Kennedy, that the company open such an office in Maryland. Id. At the time, the offices of Mr. McClure and Mr. Kennedy were located in Washington, D.C., and Weehawken, NJ, respectively. Id.; Pavsner Exh. 2 (Declaration of Coe Magruder ("Magruder Decl.") at ¶ 3. Mr. Magruder drafted a detailed written proposal regarding the opening of a new office and submitted it to these managers for approval. Pavsner Exh. 2 (Magruder Decl. at ¶ 4). Mr. McClure and Mr. Kennedy gave Mr. Magruder final approval to open the new office. Pavsner Exh. 2 (Magruder Decl. at ¶ 5); Pavsner Exh. 3 (Kennedy Dep. Trans., at 58:21-25). There is no evidence that any aspect of the decision to open the new office occurred in Maryland.

**B.      The structure of the new office.**

Mr. Magruder then proceed to set up and staff the new office, which was based in Largo, Maryland. All significant decisions regarding the structure, staffing and operation of new office were made by Mr. Magruder and other managers in his Washington office. Mr. Magruder (or Mr. Kennedy) decided that the new office would be a "satellite" office of the Washington branch, meaning that the new office was not independent but rather was tied to Mr. Magruder's branch and fell under Mr. Magruder's responsibility. Pavsner Exh. 3 (Kennedy Dep. Trans., at 46:4-48:13); Pavsner Exh. 4 (Magruder Decl. at ¶ 6). As a result, the Largo office did not have its own budget, but was instead subsumed within Mr. Magruder's budget for the Washington office. Pavsner Exh. 3 (Kennedy Dep. Trans., at 46:4-

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

---

Financial Services, Inc., No. 8:06-00803-PJM (D. Md. 2006) (hereinafter, "Cook"). The Magruder transcript has been redacted to prevent the disclosure of any information marked "confidential".

48:13); (Pavsner Exh. 4    (Bradford Carson ("Carson") Dep. Trans., at 88:2-89:8)).

Furthermore, Mr. Magruder was responsible for securing office space for the new office,

paying employee salaries and benefits.  Pavsner Exh. 3 (Kennedy Dep. Trans., at 46:4-48:13).

As Mr. Kennedy testified:

> Q   Okay.  You had mentioned the term "satellite office", correct?
> A   Yes.
> Q   And what does the term "satellite office" mean?
> A   An offshoot of a bigger office.
> Q   Was the Largo office a satellite office?
> A   Yes.
> Q   And which large office was the Largo office a satellite office of?
> A   Washington, D.C.
> Q   Why was the Largo office a satellite office of the Washington, D.C.
> office?
> [***]
> A    It was a satellite because it was a small branch, and the way -- I'm not
> speaking
> specifically about Washington, but the way you start a new branch in a lot of
> cases is that you support it through a bigger branch, and that's what was
> happening in Washington.
> Q   Okay.
> A   Financial support.
> Q    Who made the determination that the Largo office would be a satellite of
> the
> Washington, D.C. branch?
> A    I don't recall, frankly, whether it was me or Coe that wanted to do it that
> way.
> Q   But it was definitely yourself or either Mr. Magruder that made that
> determination?
> A   Yes.
> Q     You told me some of the factors that went into the classification of a
> branch
> as a satellite branch, one of them being financial support from the larger office;
> is
> that correct?
> A   That's correct.
> Q    Typically, what kind of financial support would the larger office provide
> to a
> satellite office?
> A   Pay the rent, pay the salaries, pay the benefits.

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane   •   Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

4

Id. at 46:14-48:13.

Yet Mr. Magruder failed to provide adequate support to the Largo office and its employees. Compl. at ¶¶ 27-31. Pavsner Exh. 9 (Freddie Moultrie ("Moultrie") Dep. Trans., at 106:11-107:9, 132:15-133:22). UBSFS has presented no evidence that decisions regarding policies, procedures or budgeting for the new office were made in Maryland.

## C.     Staffing the new office.

Mr. Magruder made a number of key decisions regarding assigning employees to the Largo office. He played a key role in staffing the Largo office almost entirely with African-American employees. Pavsner Exh. 1 (Magruder Dep. Trans at 49:17-52:16, 56:18-57:12). Mr. Magruder selected an African-American Broker who was working in the Washington office, Bradford Carson, to be the "manager" of the Largo office. Pavsner Exh. 4 (Carson Dep. Trans., at 33:11-16). However, Magruder's authorization was required to hire or assign Brokers to the satellite office. Pavsner Exh. 4 (Carson Dep. Trans., at 47:13-48:19, 88:2-89:8); Pavsner Exh. 9 (Moultrie Dep. Trans., at 134:20-137:12). As Mr. Magruder testified:

Q.     Who was responsible for recruiting FAs and NFAs[3] to come work at Largo?
A.     Brad Carson.
Q.     And did you play any role in that recruitment process?
        Yes. Before the office opened, Brad and I recruited more or less jointly.

        We would both go in different directions, and if I had somebody I wanted

        him to meet, I would set up the second meeting with Brad and the same for Brad. Once the office was opened, Brad took over the responsibility for

        recruiting existing producers and trainees. And then when he had

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

---

3       "FAs" refers to Financial Advisors and "NFAs" refers to New Financial Advisors or Financial Advisor Trainees.

> somebody he was interested in, he would -- after he had gotten a number of meetings down the road and he determined he's interested and they're interested, then he would have me get involved.
> [***]
> Q.    Did Mr. Carson have the authority to hire a financial advisor without getting your okay?
> A.    As a trainee?
> Q.    Okay, let's say as a trainee.
> A.    No.  At that point in time, he would have had to come to me for both.
> Q.    For both financial advisor and financial advisor trainee, he needed your okay?
> A.    Correct.

Pavsner Exh. 1 (Magruder Dep. Trans., at 56:18-57:12, 235:22-236:8).

Thus, from his Washington office, Mr. Magruder authorized the hiring or assignment of a number of employees to the satellite office, including all the Plaintiffs.  Pavsner Exh. 4 (Carson Dep. Trans., at 58:11-16. 64:10-15, 66:3-8).

Mr. Magruder was also directly responsible for selecting inexperienced or unqualified supervisory staff for the Largo office.  Pavsner Exh. 1 (Magruder Dep. Trans at 49:17-52:16, 56:18-57:12).   For example, Mr. Magruder assigned Mr. Carson to be "manager" of the satellite office even though Mr. Carson had no prior experience managing Brokers.  Pavsner Exh. 1 (Magruder Dep. Trans., at 40:6-42:4);  (Pavsner Exh. 5 (Cook Decl. at ¶ 9); Pavsner Exh. 9 (Moultrie Dep. Trans., at 73:20-77:14).

Mr. Magruder hired David Weber to be the Sales Manager of the Largo office, even though Mr. Weber did not have, and never obtained, the NASD Series 8[4] license necessary for him to supervise Brokers.  Pavsner Exh. 1 (Magruder Dep. Trans at 49:17-52:16); Pavsner Exh. 6 (David Weber ("Weber") Dep. Trans., at 43:17-44:20, 151:4-6).  As a result, for a

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

---

[4]      Also known as the Series 9 and 10.

significant period of time, there were an insufficient number of Series 8 license holders based in the Largo office, which impeded the ability of Plaintiffs to perform their work duties. Compl. at ¶ 26; Pavsner Exh. 1 (Magruder Dep. Trans at 55:3-56:17). Managers based in the Washington office, such as Janice Lytle, frequently had to provide the Series 8 approval necessary for the Largo Brokers to conduct business. Pavsner Exh. 7 (Janice Lytle ("Lytle") Dep. Trans., at 137:4-138:4, 146:1-147:3; 149:4-11); Pavsner Exh. 8 (John Crawford ("Crawford") Dep. Trans., at 90:7-15).

Mr. Magruder assigned Debbie Pittman to the position of Operations Manager of the satellite office even though she had no previous experience as an Operations Manager. Pavsner Exh. 1 (Magruder Dep. Trans., at 47:5-48:12); Pavsner Exh. 4 (Carson Dep. Trans., at 101:20-102:11). Ms. Pittman's lack of experience resulted in her not providing adequate support to certain Plaintiffs, which detrimentally affected their working conditions. Pavsner Exh. 8 (Crawford Dep. Trans., at 77:17-78:1). By contrast, UBSFS has presented no evidence that the decision to hire or transfer any supervisor was made in Maryland.

**D.      The decision to close the Largo office.**

Mr. Magruder was the principal advocate of the decision to close the Largo office. Pavsner Exh. 1 (Magruder Dep. Trans at 121:5-127:9). As he testified:

> Q.  Were you involved in the discussions about whether to close the Largo office?
> A.  Yes.
> Q.  And what was your role?
> A.  I was one of the central -- it was my responsibility. I built it. I was responsible for fixing it, stopping it, doing something.

Id. at 121:5-11.

In fact, Mr. Magruder personally informed the Plaintiffs and other Largo staff that the

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane • Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

7

office was closing in approximately June 2003. Compl. at ¶ 33; Pavsner Exh. 1 (Magruder Dep. Trans at 131:4-12). By contrast, UBSFS has presented no evidence that the decision to close the Largo office was made in Maryland.

Mr. Magruder continued to manage Plaintiffs Barham and Spradley, who were subsequently transferred to the Washington office when the satellite office closed. Mr. Spradley spent approximately twenty-six months of his tenure working in the Washington office, and Mr. Barham spent approximately six months working in the Washington office. Compl. at ¶¶ 2, 6. While they were in the Washington office, UBSFS subjected Mr. Barham and Mr. Spradley to a continuing course of discriminatory conduct that included showing preferential treatment to Caucasian Brokers, by, *inter alia*, favoring Caucasian Brokers with training and business opportunities, (Compl. at ¶¶ 38, 68-69); denying Mr. Barham and Mr. Spradley professional support, (Compl. at ¶¶ 38-39); treating them as a second-class individuals by conducting racially segregated Broker meetings and relegating them to the back of the lunch line, (Compl. at ¶¶ 35-37); perpetuating or permitting a racially hostile work environment, (Compl. at ¶¶ 35-42), failing to remedy the discriminatory employment conditions, (Compl. at ¶¶ 41-42), and terminating their employment with UBSFS. Compl. at ¶¶ 47, 73. Mr. Magruder had also managed Mr. Moultrie, who he hired to the Washington office. Pavsner Exh. 9 (Moultrie Dep. Trans., at 31:13-35:19). After approximately two months, Mr. Moultrie was transferred to the satellite office. Id. The Washington office remains in operation today.

## II.    ARGUMENT

### A.    Introduction.

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane   ●   Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

8

The standards for considering a motion to transfer venue are well established.  A court first analyzes whether a plaintiff's choice of venue is proper under the standards set forth in 28 U.S.C. §1391(b).  If the plaintiff passes this test, the court then moves to an analysis of the appropriateness of a transfer under 28 U.S.C. §1404.  <u>See</u> <u>Devaughn v. Inphonic, Inc.</u>, 403 F.Supp.2d 68, 70-72 (D.D.C. 2005) (Urbina, J.); <u>Johnson v. Lumenos, Inc.</u>, 471 F.Supp.2d 74, 76 (D.D.C. 2007) (Urbina, J.).

28 U.S.C. § 1391(b), which governs Plaintiffs' Section 1981 claims, provides that venue is proper in the district where the defendant resides or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  <u>See</u> 28 U.S.C. § 1391(b).  A corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  <u>See</u> 28 U.S.C. § 1391(c); <u>Devaughn</u>, 403 F.Supp.2d 68, 70-72.  The District of Columbia is a proper venue for the Plaintiffs' claims.

Section 1404(a) permits a court to transfer an action "to any other district where it could have been brought for the convenience of parties and witnesses, in the interest of justice[.]."  <u>Devaughn</u>, 403 F.Supp.2d at 71 (internal quotations omitted).  <u>Accord</u>, <u>Johnson</u>, 471 F.Supp.2d 74, 76.  The party requesting transfer must show that private and public-interest factors weigh in favor of transfer.  <u>Id</u>.  The private interest factors include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum;  (3) whether the claim arose elsewhere;  (4) the convenience of the parties;  (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

9

access to sources of proof.  The public interest factors include:  (1) the transferee's familiarity with the governing laws;  (2) the relative congestion of the calendars of the potential transferee and transferor courts;  and (3) the local interest in deciding local controversies at home.  Id.

UBSFS has failed to meet its heavy burden of establishing that Plaintiffs' choice of forum is inappropriate and that transfer is necessary under 28 U.S.C. § 1404(a).

### B.    Venue is Proper in the District of Columbia.

In the present case, venue is proper in the District of Columbia.  First, UBSFS resides in the District of Columbia because at the time this lawsuit was filed (May 8, 2007), UBSFS engaged in "continuous and systematic" business operations in the District of Columbia, through its branch office located at 1501 K Street, N.W., Washington D.C.  Pavsner Exh. 2 (Magruder Decl. at ¶ 1-2).  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984) (explaining that, where a defendant's contacts with the forum are "continuous and systematic," the forum will have jurisdiction over any matter involving the defendant).  At its Washington office, UBSFS employed a staff of approximately one hundred (100) employees who provided retail brokerage services to the public.  Pavsner Exh. 7 (Lytle Dep. Trans., at 71:3-10); Pavsner Exh. 1 (Magruder Dep. Trans., at 66:11-18).[5]

Second, essential events giving rise to Plaintiffs' claims occurred in the District of Columbia, whereas none occurred in Maryland.  Courts have recognized that "there can be

---

[5]     UBSFS provides no support for its statement that Defendant is subject to personal jurisdiction in Maryland.  See Defendant's Memorandum of Law ("Def. Memo."), at 9.  The Largo office has been closed since 2003.  UBSFS' bare-bones claim that it is "plainly subject to personal jurisdiction in Maryland because it does business there", is not supported by any citation to an accompanying affidavit or document.  Id.

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200  •  Fax 220-1214

more than one district in which a substantial part of the events giving rise to the claim occurred".   FC Investment Group LC v. Lichtenstein, 441 F.Supp.2d 3, 11 (D.D.C. 2006).  In such a situation,  "it is no longer appropriate to ask which district is the "best" venue, or which venue has the most significant connection to the claim[].   The proper question is "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." Id. (citations omitted).

In the present case, the District of Columbia has a substantial connection to the claims. As set forth in Section I, supra, key events giving rise to Plaintiffs' claims occurred in the District of Columbia, including:

· The decision to establish the Largo office to cater to minorities;

· Key decisions regarding structure, staffing, operation and closure of the Largo office that Mr. Magruder made form the basis for Plaintiffs' claims of discrimination;

· The authorizations to hire each of the Plaintiffs, to making it a segregated establishment;

· The assignment of inexperienced or unqualified supervisory staff to the Largo office, including Mr. Carson, Mr. Weber and Ms. Pittman;

· Managers responsible for or involved in supervising the Largo office and Plaintiffs' employment were based in Washington, including Mr. Magruder and Ms. Lytle;

· Three of the Plaintiffs (Mr. Barham, Mr. Moultrie and Mr. Spradley) worked in Washington;

· Key decisions regarding operation of the Washington office form the basis for

**Joseph**
**Greenwald**
**& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

11

Plaintiffs' claims of discrimination.

In sum, a substantial part of the events giving rise to Plaintiffs' claims occurred in the District of Columbia.    By contrast, no significant decision was made in Maryland. Accordingly, venue is proper in the District of Columbia.

## C.    Defendant has not met its burden under § 1404(a), thus transfer of the case is not warranted.

The moving party "bear[s] a heavy burden of establishing that plaintiffs' choice of forum is inappropriate." Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Resources, Inc., 196 F.Supp.2d 21, 31 (D.D.C. 2002).  UBSFS has not met this burden.

### 1.    Private Interest Factors.

#### a.    The Plaintiffs' choice of forum

The plaintiff's choice of a forum is "a paramount consideration" in any determination of a transfer request.  Thayer/Patricof Educ. Funding, 196 F.Supp.2d at 31.  A plaintiff's choice  is given "substantial deference" where the particular controversy has "meaningful ties to the forum, and the plaintiff is a resident of that forum". Id.  See Green v. Footlocker Retail, Inc., No. Civ.A. 04-1875, 2005 WL 1330686 at * 1, 2 (D.D.C. 2005) (" Plaintiff's choice should rarely be disturbed unless the balance is strongly in favor of the defendant.").

As set forth in Section I, the Plaintiffs' choice of forum has meaningful ties to the controversy.  Numerous actions that took place in Washington form the basis of Plaintiffs' claims, key decision-markers were located in Washington, key decisions were made in Washington, and a number of the Plaintiffs worked in Washington.  In addition, two of the Plaintiffs, Michael Barham and John Crawford currently reside in the District of Columbia. Pavsner Exh. 10 (Michael Barham ("Barham") Dep. Trans., at 25:16-20); Pavsner Exh. 8

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

(John Crawford ("Crawford") Dep. Trans., at 6:14-18).  See <u>The Wilderness Soc. v. Babbitt</u>, 104 F.Supp.2d 10, 14-15 (D.D.C. 2000) (finding that plaintiffs' ties to the forum weighed against transfer where *some, although not all,* of the plaintiffs resided in the forum).  Also, UBSFS resides in Washington.  See <u>Green</u>, 2005 WL 1330686 at * 2 ("it cannot be argued that plaintiff's choice lacks any meaningful ties to the controversy, since plaintiff lives here and defendant does business here.").  As a result of these meaningful ties to the forum, and the fact that some of the Plaintiffs reside here, Plaintiffs' choice of forum is entitled to substantial deference.

  b. <u>Whether the claim arose elsewhere</u>.[6]

  As set forth in Section I, the activities that form the basis of this suit focus on discriminatory actions taken by Mr. Magruder and other managers located in UBSFS' Washington office.  These actions have a significant connection with the District of Columbia, therefore, UBSFS cannot credibly argue that venue is improper in this District.  UBSFS' claim that a substantial part of the events giving rise to Plaintiffs' claims occurred in Largo is inaccurate, but even if true, would not justify the conclusion that venue is improper in the District of Columbia.  Courts have rejected similar arguments by a movant that because "major events" allegedly occurred elsewhere transfer was warranted:  "The court may not transfer simply because the court thinks another forum may be superior to plaintiff's chosen forum".  <u>Green</u>, 2005 WL 1330686 at * 2.  As the court stated in <u>FC Investment Group LC</u>, "[d]efendants' contention that the nucleus of facts giving rise to the claim occurred in Illinois, [] does not necessarily warrant the conclusion that venue is improper in the District of

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane &bull; Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 &bull; Fax 220-1214

_____

[6]  With respect to Defendant's choice of forum, Defendant's reasons for wanting

Columbia.[...] [I]t is entirely proper for this Court to hear Plaintiffs' claim so long as they bear a substantial connection to the District of Columbia." <u>Id</u>. at 12 (citations and internal quotations omitted).  Plaintiffs' claims arose in Washington and venue is proper in this District.

       c.    <u>Convenience of the parties and witnesses</u>.

     Defendant has failed to show that Plaintiffs' choice of forum is clearly outweighed by other factors. "In order to demonstrate that it is necessary to transfer venue, a defendant must make a substantial showing that transfer is necessary." <u>FC Investment Group LC</u>, at 13. Regarding the convenience of the parties and witnesses, "a defendant must show that witnesses would be unwilling to testify in the [plaintiffs' chosen forum]." <u>Id</u>. at 14.  UBSFS makes no showing of party or witness inconvenience, and misconstrues its burden to make an affirmative showing that transfer is *necessary*, by claiming that this factor "fail[s] to support retaining this case in D.C."  Def. Memo., at 12.  Absent such a showing by UBSFS, it is assumed that key witnesses will appear. <u>FC Investment Group LC</u>, at 14.  Nor has UBSFS established any "particular hardship" in litigating this suit in the District of Columbia. <u>The Wilderness Soc.</u>, 104 F.Supp.2d at 15.  In fact, throughout its brief, UBSFS makes a number of arguments for transfer based on convenience that are accompanied by little-to-no evidentiary support.  <u>See</u> <u>Thayer/Patricof Educ. Funding</u>, 196 F.Supp.2d at 33 ("[I]n connection with motions to transfer, courts should only consider undisputed facts supported by affidavits, depositions, stipulations or other relevant documents. ").

     The reality is that the District of Columbia is a more convenient venue for the parties

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

the case transferred to Maryland are set out fully in its motion.

and witnesses.  A number of key non-party witnesses live or work in the District of Columbia, including Mr. Magruder, (Pavsner Exh. 1 (Magruder Dep. Trans., at 7:14-19), Mr. Carson, (Pavsner Exh. 4  (Carson Dep. Trans., at 9:4-10:1), and Ms. Lytle, (Pavsner Exh. 7 (Lytle Dep. Trans., at 75:8-82:7).  Furthermore, the locus of discovery in the Cook case has overwhelmingly been in the District of Columbia, which underscores the convenience of the District of Columbia as the venue for these claims.  At Defendant's request, Mr. Cook and Mr. Fleming, and nine of the twelve key non-party witnesses deposed to date regarding Mr. Cook and Mr. Fleming's claims were deposed in the District of Columbia, namely Mr. Magruder, Mr. Carson, Ms. Lytle, Mr. Barham, Mr. Crawford, Mr. Moultrie, Ms. Smith,  Mr. Watkins and Mr. Weber.  Pavsner Exh. 1 (Magruder Dep. Trans., at 1); Pavsner Exh. 4 (Carson Dep. Trans., at 1); Pavsner Exh. 7 (Lytle Dep. Trans., at 1); Pavsner Exh. 10 (Barham Dep. Trans., at 1); Pavsner Exh. 8 (Crawford Dep. Trans., at 1); Pavsner Exh. 9 (Moultrie Dep. Trans., at 1); Pavsner Exh. 11 (Monica Smith "Smith") Dep. Trans., at 1); Pavsner Exh. 12 (Paul Watkins ("Watkins") Dep. Trans., at 1); Pavsner Exh. 6 (Weber Dep. Trans., at 1). Notably, not one single plaintiff or witness in the Cook case was deposed in Maryland.  It is also noteworthy that the offices of defense counsel, Covington & Burling, are located in the District of Columbia.  See Green, 2005 WL 1330686 at * 1, 2 (listing the "location of counsel" as one of the private and public interest factors considered by courts, and finding that "defendants fail to establish that a transfer would be significantly more convenient for their counsel".).  In sum, UBSFS has not met its burden to show that the District of Columbia is an inconvenient forum for the parties and witnesses.

   d.  <u>Ease of access to sources of proof.</u>

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

15

UBSFS does not contend that transfer of this case to Maryland would promote ease of access to sources of proof. By contrast, maintaining the case in this District would enable access to sources of proof.  For example, UBSFS' existing Washington office will be a source of proof in this action, whereas the Largo office has been closed for almost four years. Pertinent documents, including documents regarding the Largo office and personnel files of Brokers employed in the Washington office, were maintained in the Washington office.  See Exhibit C to Defendant's Motion to Transfer, at 16; Pavsner Exh. 7 (Lytle Dep. Trans., at 125:1-126:11).  By contrast, UBSFS does not point to any documents located in Maryland. Also the jury will be able to view the Washington office, the locus of many of the acts underlying Plaintiffs' claims.  Based on these factors, UBSFS has not met its burden to transfer venue from the District of Columbia.

## 2.    Public Interest Factors[7]

a.    <u>Local interest in deciding local controversies at home.</u>

The local interest of the District of Columbia is served by maintaining venue here.  As explained above, Plaintiffs' choice of forum has meaningful ties to the controversy because of actions that took placed in Washington, a number of the Plaintiffs worked in this District, and a number of the Plaintiffs reside in this District.

b.    <u>Related litigation.</u>

UBSFS attempts to make much of the fact that the <u>Cook</u> case is pending in the District

---

[7]    Plaintiffs agree that the transferee court's familiarity with the governing laws, and the relative congestion of the calendars of the potential transferee and transferor courts, are factors which are not significantly implicated in this case.  <u>See</u> Def. Memo., at 9.

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

of Maryland, however, such attention is misplaced. First, Judge Stein's venue ruling in <u>Cook</u> addressed whether New York or Maryland was the proper venue for the claims; he did not rule on whether the District of Columbia was a proper venue for the case. Pavsner Exh. 13 (Opinion and Order of Sidney H. Stein, dated March 21, 2006, at 5-10). Moreover, Judge Stein found that "unlawful employment practices alleged in the Complaint [...] occurred in Maryland *and Washington, D.C.*". <u>Id</u>. at 6 (emphasis added). This lends further support to the conclusion that venue is proper in the District of Columbia.

Second, the fact that the <u>Cook</u> case was filed before the <u>Barham</u> case does not mean that transfer is necessary. In <u>Thayer/Patricof Educ. Funding</u>, the court rejected defendant's argument that because they first-filed the case in an alternate court, equitable considerations of comity and the efficient administration of justice warranted transferring the second suit to the venue of the first. <u>See Thayer/Patricof Educ. Funding</u>, 196 F.Supp.2d at 29. The court stated, "[t]he first-filed rule is not rigidly or mechanically applied", and emphasized that the plaintiff's choice of forum must be given proper weight and "cannot be dismissed merely because defendants opt for a different forum." <u>Id</u>. at 30. Furthermore, although UBSFS claims that the <u>Cook</u> Court has made a number of "substantial rulings", (Def. Memo., at 10), Defendant does not cite to any specific rulings made by the Court or provide any supporting documents. This is because no substantial ruling has been issued to date. The only rulings made in Maryland to date are: (1) an order granting plaintiffs' request to dismiss the class allegations without prejudice, (2) an order granting defendant's motion to compel production of the plaintiffs' tax returns, and (3) an order dismissing plaintiffs' motion to compel without prejudice, instructing the parties to meet and confer regarding outstanding discovery and

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane ● Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

extension of the discovery deadline. Pavsner Exh. 14 (Memorandum Order, dated April 23, 2007); Pavsner Exh. 15 (Memorandum Order, dated May 22, 2007); Pavsner Exh. 16 (Memorandum Opinion and Order, dated May 29, 2007). Contrary to UBSFS' assertion, a number of depositions remain to be taken, and fact discovery continues in the Cook case. Thus the Cook plaintiffs anticipate proposing an extension of the discovery deadline. Also, the Cook plaintiffs have moved to transfer the claims of Mr. Cook and Mr. Fleming to this District. Accordingly, given the few and limited rulings made in Cook and the procedural posture of that case, a delay would not result if this Court had to familiarize itself with the procedural background of the case.

The instant case stands in stark contrast to the factual pattern in Devaughn, 403 F. Supp. 68. There, this Court granted a transfer motion to the District of Maryland in a §1981 case brought by a plaintiff who worked at the defendant's Maryland office. Id. In Devaughn, plaintiff's employment records were located in Maryland. Id. at 73. Here, they are not. In Devaughn, plaintiff filed an administrative complaint in Maryland. Id. at 70. Here, there were no such filings. In Devaughn, plaintiff did not allege that her claim had any "meaningful connection" to the District of Columbia. Id. at 72. Here, plaintiffs have set forth facts showing that their claims were closely linked to this District and only tangentially linked to Maryland. In Devaughn, all the witnesses were Maryland residents. Id. at 73. Here, key witnesses, including Mr. Magruder, are residents of Washington. Pavsner Exh. 1 (Magruder Dep. Trans at 7:16-19). In Devaughn, all the discriminatory conduct occurred in Maryland. Id. Here, as demonstrated above, all of the key discriminatory decisions were made in Washington.

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

In summary, UBSFS has not demonstrated that the convenience of the parties and witnesses, or the interest of justice militates in favor of transferring this case to Maryland.

## III.    CONCLUSION

For these reasons, the Court should deny Defendant's motion to transfer this case.

**Joseph**
**Greenwald**
**& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

19

Dated:  June 21, 2007

Respectfully Submitted

/s/  Steven M. Pavsner_____

JOSEPH, GREENWALD & LAAKE, P.A.
Steven M. Pavsner  Bar ID#912220
Brian J. Markovitz  Bar ID#481517
6404 Ivy Lane, Suite 400
Greenbelt, Maryland  20770
Tel: 301-220-2200
Fax: 301-220-1214

BERGER & MONTAGUE, P.C.
Keino R. Robinson
Shanon J. Carson
Selim Ablo
Jonathan Stanwood
1622 Locust Street
Philadelphia, PA 19103
Tel: 215-875-3000
Fax: 215-875-4604

GARWIN, GERSTEIN & FISHER, L.L.P.
Bruce E. Gerstein
Brett Cebulash
Archana Tamoshunas
Andy Aubertine (contract)
1501 Broadway, Suite 1416
New York, NY 10036
Tel: 212-398-0055
Fax: 212-764-6620

**Attorneys for Plaintiffs**

**Joseph**
   **Greenwald**
      **& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

20

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21 day of June, 2007, a true and correct copy of the foregoing Memorandum in Opposition to Defendant's Motion to Transfer to the District of Maryland, was electronically filed and notification of such filing was made by the Court via e- mail to all counsel electronically registered with the Court.

/s/ Steven M. Pavsner_____

**Joseph**
**Greenwald**
**& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

21

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL BARHAM, JOHN CRAWFORD, FREDDIE MOULTRIE, MONICA SMITH, MARK SPRADLEY, PAUL WATKINS, and SEAN WINTZ, <br> Plaintiffs, <br><br> v. <br><br> UBS FINANCIAL SERVICES, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) |

Civil No. 07-CV-00853-RMU

(ECF)

## **PROPOSED O R D E R**

The Court, having considered Defendant's Motion to Transfer Case to the

District of Maryland, and Plaintiffs' response thereto, it is hereby ORDERED that

Defendant's Motion is DENIED.

Dated: _____

_____
Ricardo M. Urbina
United States District Judge

**Joseph**
**Greenwald**
**& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214