UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MICHAEL BARHAM, JOHN CRAWFORD, FREDDIE MOULTRIE, MONICA SMITH, MARK SPRADLEY, PAUL WATKINS, and SEAN WINTZ <br><br> Plaintiffs, <br><br> v. <br><br> UBS FINANCIAL SERVICES INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) Civil No. 07-CV-00853-RMU ) ) ) ) ) ) |

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF
ITS MOTION TO TRANSFER CASE TO THE DISTRICT OF MARYLAND**

Plaintiffs acknowledge that this action is "closely related" to the *Cook* case that has been proceeding in the District of Maryland for well over a year. Indeed, Plaintiffs' opposition is itself riddled with references to discovery materials from the Maryland action. Plaintiffs apparently concede that the factual and legal issues presented by the two cases are virtually identical and that the two cases should be consolidated. Yet Plaintiffs have made no attempt to explain why it makes more sense to hear these two "closely related" actions in the District of Columbia rather than in Maryland. Given the advanced stage of the Maryland action, it is clear that the interests of justice and trial efficiency overwhelmingly favor a transfer to that forum.

Moreover, it is plain that Maryland is the locus of Plaintiffs' claims. Plaintiffs' argument that venue is more appropriate in the District of Columbia because their immediate supervisor reported to a manager in the District of Columbia, and thus that certain decisions were made or approved there, is unavailing. Their Complaint contains over 65 separate references to Largo, Maryland. The only common element binding the claims of the seven Plaintiffs is that each of them worked for UBSFS in Largo and alleges racial discrimination by UBSFS while employed in the Largo Branch Office. All of the day-to-day decisions affecting the terms and conditions of their employment were made by their immediate supervisor in Largo, and the effects of those decisions were obviously felt in Largo. Only two of the seven assert claims based upon anything other than their employment in Largo, and Plaintiffs' counsel has moved to withdraw as counsel for one of these two. In short, Maryland has the overwhelmingly stronger local interest in this case, since it concerns allegations of discrimination that allegedly occurred there.

None of the other case-specific considerations alter the conclusion that the totality of factors in this case points strongly in favor of a transfer to Maryland. The Court should not give substantial deference to Plaintiffs' forum choice, for example, because Plaintiffs' claims have only a tenuous connection to the District of Columbia and a majority of the Plaintiffs live in Maryland. Nor should the Court give weight to the convenience and availability of witnesses and the ease of access to sources of proof: This Court is so close to the Greenbelt Division of the District of Maryland that neither forum has an advantage in terms of convenience and access to evidence.

I.      The Fact That A Related Action Has Been Proceeding in Maryland for More Than A Year Is A Compelling Factor in Favor of Transfer.

Plaintiffs attempt to minimize, and virtually ignore, the critical fact that a "closely related" case is proceeding in Maryland.[1] Despite the undisputed reality that "courts have occasionally called the existence of related litigation … 'the most compelling factor in determining the appropriateness of transfer,'" Plaintiffs only cursorily address this "most compelling" factor at the tail end of their opposition. *Boisjoly v. Morton Thiokol, Inc.*, Civ. A. No. 87-0194, 1987 WL 11217, at *2 (D.D.C. May 14, 1987). Moreover, none of their arguments regarding this factor withstands scrutiny.

Plaintiffs do not dispute that the *Cook* case is "closely related," and they in fact highlight the close relationship between the two cases by relying on numerous depositions taken in the Maryland case as putative support for their opposition to this motion to transfer this case to Maryland. Instead, Plaintiffs suggest that substantial discovery in the *Cook* case in Maryland is on-going. But this is plainly untrue. UBSFS' document production in that case is already complete. The Maryland plaintiffs have already deposed witnesses in that case, with only one deposition still to be completed.[2] Nor can Plaintiffs dispute the fact that, according to the Maryland court's scheduling order, the deadline for fact discovery has already closed. Instead, they simply assert that "the *Cook* plaintiffs anticipate proposing an extension of the discovery

---

[1] As discussed in UBSFS' opening memorandum, the same four law firms and eleven attorneys who represent the Plaintiffs in this case filed a motion on May 24 to transfer the *Cook* case to this Court and, in that motion, described the two cases as "closely related." Briefing on that motion is now complete because the *Cook* plaintiffs, after securing an extension of time to file a reply from June 25 to June 29, 2007, elected not to file a reply.

[2] The deposition of a former UBSFS manager, Suzanne McGovern, was noticed by the Maryland plaintiffs prior to the close of discovery, but they failed to serve her with a subpoena within the discovery period. UBSFS has nevertheless consented to the taking of her deposition, which likely will occur in mid-July. UBSFS, however, will vigorously oppose any additional discovery beyond that single deposition.

3

deadline." (Opp., p. 18.) If and when any such extension is requested, however, UBSFS will vigorously oppose it, and there is no basis for Plaintiffs credibly to suggest that they are likely to receive permission from the Court to take further significant discovery.[3]

Plaintiffs suggest that the Maryland litigation is not at a mature stage. This too is plainly not true, for it ignores the fact that the Maryland court has already scheduled oral argument on, among other things, two motions for summary judgment that together reach the claims of all three plaintiffs in the Maryland action. Thus, by the time the Maryland court hears oral argument on these motions on August 1, 2007, it will necessarily have spent a great deal of time and energy familiarizing itself with the legal and factual issues in the case.[4]

Plaintiffs argue that the first-filed status of the *Cook* case "does not mean that transfer is necessary." (Opp., p. 16) This argument is a straw man. UBSFS does not contend that this case should be transferred to Maryland because it narrowly won a race to the courthouse. Rather, the basis for a transfer is that the *Cook* case has been proceeding in the District of Maryland for well over a year, and has progressed to the point where, among other things, the Maryland court has scheduled oral argument on two motions for summary judgment. The facts here are very different from those in *Thayer/Patricof Education Funding LLC v. Pryor*

---

[3]   The magistrate judge assigned to the *Cook* action stated on May 30, 2007 that, in light of his dismissal without prejudice of the *Cook* plaintiffs' motion to compel, the court "will entertain any reasonable request by the parties to extend the discovery deadline." (*Cook* Dckt. No. 86). No such request has yet been made. Moreover, the manifest purpose of this order was simply to permit plaintiffs timely to renew those aspects of their motion to compel that they have not abandoned in light of the dismissal of their class claims. To the extent that the *Cook* plaintiffs might seek additional documents (other than those raised in their motion to compel) or to depose individuals whose depositions they failed to notice by the close of fact discovery under the Court's existing deadline, UBSFS intends to oppose any such request as unreasonable.

[4]   Oral argument on motions in the Maryland case, including one of UBSFS' summary judgment motions, had been scheduled for June 18, 2007, but was postponed until August 1, 2007, at the request of plaintiffs' counsel.

*Resources, Inc.*, 196 F. Supp. 2d 21 (D.D.C. 2002), the principal case upon which Plaintiffs rely. In that case, the court considered whether to transfer a case to the district where a related action had been filed just *two weeks* earlier. *Id.* at 24. Here, by contrast, the related *Cook* action was filed in late 2005 and has been proceeding in the District of Maryland since early 2006. The *Thayer/Patricof* court's observation that the first-filed rule should not be "applied rotely" was made in a context where the first-filed action was "a preemptive strike" in what the court termed "essentially a declaratory judgment action" on the part of defendants. *Id.* at 30. Here, by contrast, there are no similar equitable considerations that would counsel against a transfer to Maryland, where related litigation – not instituted by defendant UBSFS – has been proceeding for over 15 months.

        Plaintiffs also assert that the Southern District of New York, in transferring the *Cook* action to Maryland, did not find that venue in that case would have been improper in the District of Columbia. However, UBSFS' argument is not that venue in the District of Columbia is *improper*; rather, it is that the interests of justice and litigation efficiency would be disserved if the Court did not exercise its discretion to transfer this case.[5] Furthermore, Judge Stein never had the opportunity to consider whether the District of Columbia was a proper venue for that case because the Maryland plaintiffs – who are represented by the same eleven lawyers and four law firms as Plaintiffs in this case – never suggested that this district was a more appropriate forum and never asked the court to transfer that case to the District of Columbia. *See Cook v. UBS Fin. Servs., Inc.*, No. 05 Civ. 8842(SHS), 2006 WL 760284 (S.D.N.Y. Mar. 21, 2006).

---

[5] For this reason, Plaintiffs' citation to *FC Investment Group LC v. Lichtenstein*, 441 F. Supp. 2d 3, 12 (D.D.C. 2006), for the proposition that venue is proper in a district with substantial connections to an action, is also inapposite. (Opp., pp. 13-14.) As the *FC Investment Group* decision itself makes clear, the fact that venue is proper under 28 U.S.C. § 1391 does not resolve the question whether a discretionary transfer motion should be granted.

5

II.  Plaintiffs' Claims Arose in Maryland, Which Has a Strong Local Interest in the Case.

Plaintiffs also argue that the District of Columbia has a stronger local interest in this case than does Maryland and that their claim primarily arose in the District of Columbia. These arguments, too, are unavailing. As Judge Stein expressly found in the "closely related" *Cook* case, "*most of the events at issue occurred*" in Maryland." *Id.* at *6 (emphasis added). Even a cursory review of Plaintiffs' Complaint in this case, which mentions Largo at least 65 separate times, makes plain that acts and omissions in Largo are the central focus of Plaintiffs' claims. The only common claim shared by the seven Plaintiffs is that they were allegedly discriminated against on the basis of their race while they worked for UBSFS in Maryland. Therefore, Plaintiffs' suggestion that these factors support their venue choice is belied by undisputed facts.

Plaintiffs do not dispute that the day-to-day responsibility for managing the Largo Branch Office – including the hiring of support staff, overseeing training, assigning to FAs the accounts of departing FAs, and managing the finances of the Largo Branch Office – fell to their immediate manager, Brad Carson, who was located in Largo. (Memo, pp. 7-8.) Nor do they dispute that, after the Largo Branch Office was opened, Carson had exclusive "responsibility for recruiting [both] existing producers and trainees." (Opp., p. 5 (quoting Magruder Dep., at 57).)

Plaintiffs instead argue that, because the approval of Carson's Washington-based manager, Coe Magruder, was required for some decisions, the factual nexus of the case is the District of Columbia. The mere fact that Carson, like most employees, sometimes needed supervisor approval for important decisions does not change the critical fact that Carson was the Resident Branch Office Manager of the Largo Branch Office, with primary responsibility for making employment decisions regarding the employees of that office. Nor does it change the fact that each of the Plaintiffs worked for UBSFS in Maryland and, in all but two cases, assert

6

claims against UBSFS *only* for discrimination that allegedly occurred while working in UBSFS' Largo Branch Office. Therefore, it is clear that Maryland has a substantially stronger local interest in this case, as it concerns events that overwhelmingly occurred in, and affected employees who worked in, Maryland.[6]

III.   Plaintiffs' Choice of Forum Is Entitled to Little Deference Here.

Plaintiffs place great reliance on the fact that the District of Columbia is their preferred forum, but fail to address the compelling reasoning of other cases declining to give substantial deference to plaintiffs' forum choices on materially indistinguishable facts. Because their claims arose primarily in Maryland, where the majority of Plaintiffs live, the Court should not give great weight to Plaintiffs' forum choice.

Plaintiffs do not dispute that substantially diminished deference is due to plaintiffs' forum choice when the claim has little material connection to the jurisdiction in which

---

[6]   Insofar as Plaintiffs rely on facts concerning the establishment of the Largo Branch Office and the circumstances of their hiring, any claims relating to these facts are manifestly time-barred and cannot serve as a basis for retaining venue in the District of Columbia. According to the Complaint, the Largo Branch Office was opened "in approximately November 2000." Compl., ¶ 20. Plaintiff Barham alleges that he was hired by UBSFS in September 9, 2002, and that he began to work in the Largo Branch Office at that time. Compl., ¶ 2. All of the other Plaintiffs allege that they were hired well before this time. *See* Compl., ¶¶ 3-8. It is clear that hiring claims under 42 U.S.C. § 1981 are governed by "borrowed" state statutes of limitations. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987). Here, under either Maryland or District of Columbia law, the relevant borrowed state limitations period is three years. *See Carney v. American Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998) (citing D.C. Code § 12-301(8)); *Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004); Md. Code § 5-101. Moreover, even if the federal four-year statute of limitations, 28 U.S.C. § 1658, applies to any of Plaintiffs' claims that they were unlawfully transferred (or "assigned") to the Largo Branch Office, each of the alleged transfers to Largo occurred well before September 9, 2001. *See* Compl., ¶¶ 3-8. Thus, as of September 9, 2005, all of the Plaintiffs' claims relating to the opening of the Largo Branch Office or the circumstances of their hiring or their assignment to the Largo Branch Office were time-barred. This is true even if Plaintiffs argue that the pendency of the *Cook* action tolled their claims because the *Cook* case was not filed until October 2005, and any such tolling would be irrelevant to claims that were already untimely as of this date. Plaintiffs, therefore, may not rely on facts relating to these claims in opposing UBSFS' transfer motion.

suit has been brought. Plaintiffs' assertion that their claim has a substantial connection to the District of Columbia, however, is incorrect. As discussed above, Plaintiffs' immediate manager, Brad Carson, made the key decisions affecting the terms and conditions of their employment at the Largo Branch Office. Moreover, it is undisputed that a majority of the Plaintiffs never worked for UBSFS in its Washington Branch Office.[7] In sum, their forum choice deserves substantially diminished deference.

Plaintiffs also do not dispute that less deference is warranted where plaintiffs do not reside in the district where they have brought suit. They cite *Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000), for the proposition that venue may be appropriate in a district where some, but not all, of the defendants reside. (Opp., pp. 12-13.) In that case, however, "six of the eight plaintiffs ha[d] offices in the District of Columbia" and four were headquartered in Washington – which represented a more substantial presence than any other district, including the proposed transferee venue. *Id.* at 14, 15. Here, by contrast, only two of the seven Plaintiffs reside in this district, whereas four of the seven reside in Maryland. This factor, too, therefore substantially undermines Plaintiffs' entitlement to deference in this case.

Plaintiffs' counsel last week filed a motion to withdraw as counsel for Plaintiff Spradley, citing "irreconcilable differences over the management and direction of th[is] litigation." (Dckt. No. 13, p. 1.) It is therefore unclear at the moment whether Spradley intends to pursue this action at all. Because Spradley was one of the two Plaintiffs who assert any claims

---

[7] In addition to Plaintiffs Barham and Spradley, Plaintiffs state in their opposition that Plaintiff Moultrie worked in UBSFS' Branch Office in the District of Columbia. (Opp., p. 11.) This fact is irrelevant. Moultrie transferred from the District of Columbia Branch Office to the Largo Branch Office in January 2001 and continued to work out of that office until he resigned in January 2003. Compl., ¶ 4. Moultrie cannot assert any timely claims under Section 1981 based upon his employment in UBSFS' Branch Office in the District of Columbia during the period between September 2000 and January 2001.

regarding employment by UBSFS in the District of Columbia, this development further weakens the connection of this case to Washington and further diminishes the deference due to Plaintiffs' forum choice.[8]

Whether or not Spradley remains a part of this lawsuit, it is clear that this case has a much stronger connection to Maryland than to the District of Columbia. All of the Plaintiffs worked in Maryland, where decisions affecting the terms and conditions of their employment were felt and, to an overwhelming extent, made. Only two Plaintiffs assert claims based upon their employment by UBSFS in the District of Columbia. And only two live in the District of Columbia, whereas four live in Maryland. Accordingly, the court should "afford 'substantially less deference' to" Plaintiffs' forum choice. *See, e.g.*, *Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 72 (D.D.C. 2005).

---

[8] Moreover, the dispute between Plaintiffs' counsel and Spradley further highlights the intimate connection between this case and the Maryland case, and therefore that judicial efficiency would be well-served by consolidation in Maryland. On June 13, 2007, UBSFS filed a motion for sanctions against Spradley and Plaintiffs' counsel in connection with Spradley's failure to appear at his deposition as a witness in the Maryland action. (Counsel refused voluntarily to reimburse UBSFS for expenses incurred in connection with the scheduled deposition despite their having accepted a subpoena on Spradley's behalf.) In seeking to withdraw from their representation of Spradley in this action, Plaintiffs' counsel stated that Spradley had "refused to cooperate with [them] regarding the scheduling and taking of his deposition" in the *Cook* case. (Dckt. No. 13.) Spradley today filed a *pro se* response to UBSFS' motion for sanctions in the *Cook* case, in which he argued that he had "repeatedly informed" Plaintiffs' counsel that "he did not want to be deposed as a third party witness" and that he had instructed counsel to "seek to quash the subpoena" in the *Cook* case. (Att. 1, pp. 1-2.) Spradley also stated that he was not informed by Plaintiffs' counsel of his scheduled deposition until the day before it was scheduled, at which time he informed Plaintiffs' counsel (but they apparently did not inform UBSFS) that he was not available on that date. (*Id.*, p. 3.) Thus, the Court in the Maryland action will soon need to decide a dispute between a Plaintiff in this case and Plaintiffs' counsel in this case.

IV.     None of the Other Factors Significantly Alters the Balance In Favor of a Transfer.

Plaintiffs erroneously assert that UBSFS "misconstrues its burden" (Opp., p. 14) because UBSFS, in effect, argued that the availability and convenience of witnesses, and the ease of access to sources of proof, are irrelevant considerations on the facts of this case. It is Plaintiffs, however, who apparently misapprehend the nature of the inquiry. In deciding a motion to transfer, the Court must undertake an individualized, case-specific analysis to determine whether the totality of the circumstances support a transfer. *See generally Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). It is obviously not the case that every factor considered by the Court must support a transfer; rather, the requirement is that all of the factors, taken together, do so. Here, two key factors strongly supporting a transfer are that (1) this is, at bottom, a Maryland case and (2) a "closely related" action has been proceeding in Maryland for well over a year. In light of the overwhelming importance of these two factors in this case, UBSFS may satisfy its burden even if the remaining factors are a wash.

Moreover, it is clear that the remaining factors are a wash. In arguing otherwise, Plaintiffs simply ignore reality. They do not and cannot dispute that this Court sits fewer than 15 miles from the Greenbelt Division of the District of Maryland, where Judge Messitte's court is located. *See Weinberger v. Tucker*, 391 F. Supp. 2d 241, 245 (D.D.C. 2005) ("[A]s defendant notes, '[t]ransferring this case to a court that sits less than nine miles away, in a neighboring jurisdiction, will have minimal effect on witnesses, the availability of compulsory process, proximity to evidence and the other factors considered under § 1404(a).'"). UBSFS does not

argue that the District of Columbia is inconvenient; UBSFS simply observes that, for purposes of witness convenience and availability, the District of Maryland is materially indistinguishable.[9]

As Plaintiffs apparently concede, there is no witness who lives in the District of Columbia who would not be subject to the subpoena power of the Maryland court. *See* Fed. R. Civ. P. 45. They have not suggested – let alone come forward with evidence to support the assertion – that any witness would be unavailable to them if this case were transferred. These facts alone are fatal to their claim that the convenience of the witnesses factor militates against transfer here. *See Johnson v. Lumenos, Inc.*, 471 F. Supp. 2d 74, 76 (D.D.C. 2007) (noting that "the convenience of the witnesses" is a factor, "*but only to the extent that the witnesses may actually be unavailable for trial in one of the fora*" (emphasis added)). Similarly, Plaintiffs' assertion that venue in the District of Columbia is supported by the "ease of access to sources of proof" factor is belied by (1) the fact that many of the relevant documents have already been collected and (as appropriate) produced in the Maryland litigation, and (2) the indisputable proximity of the two courts.[10] These factors do nothing to alter the balance of private and public interest in this case, which otherwise strongly supports a transfer to Maryland.

---

[9] Plaintiffs make much of the fact that many of the depositions in the Maryland action took place in the Washington office of UBSFS' counsel. (Opp., p. 15.) It is difficult to perceive the significance of this fact. However, it seems no more relevant than that Plaintiffs' Complaint, and their memorandum in opposition to this motion, were filed by and on the letterhead of Plaintiffs' Greenbelt, Maryland-based local counsel.

[10] Although UBSFS has considerable difficulty appreciating the possible need for "the jury to view the Washington office" (Opp., p.16), a transfer to a courthouse fewer than 15 miles away would not, it seems, materially impair the possibility of such a trip.

11

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in its opening memorandum, the Court should grant UBSFS' motion and transfer this case to the District of Maryland (Greenbelt Division).

Respectfully Submitted,

Of Counsel:

Claudia Cohen, Esq.
Executive Director and Senior Associate General Counsel
UBS Financial Services Inc.
1200 Harbor Boulevard
Weehawken, New Jersey 07086-6791

Dated:  July 2, 2007

/s/  Jeffrey G. Huvelle
Eric H. Holder, Jr. (303115)
Jeffrey G. Huvelle (227769)
Thomas S. Williamson, Jr. (217729)
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
(202) 662-6000

*Attorneys for Defendant*
 *UBS Financial Services Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2007 JUL -2 P 1: 14

|   |   |
|---|---|
| FREDDIE H. COOK, et al., | ) |
| Plaintiffs | ) Civil No. 06-cv-00803-PJM |
| v. | ) |
| UBS FINANCIAL SERVICES INC., | ) |
| Defendant. | ) |

## PLAINTIFFS' THIRD PARTY WITNESS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR A FINDING OF CIVIL CONTEMPT AND SANCTIONS

Mark M. Spradley, purported Plaintiffs' third-party witness, submits this memorandum in opposition to Defendant's motion for a finding of civil contempt and sanctions.

Mr. Spradley, purportedly a witness for Plaintiffs repeatedly informed counsel for Plaintiffs that he did not want to be listed as a witness in the above referenced matter. Despite this, counsel for Plaintiffs listed Mr. Spradley as a witness, accepted a subpoena for Mr. Spradley's testimony, and apparently repeatedly scheduled and rescheduled depositions for his testimony. All of this was done solely by counsel for Plaintiffs, over the objections of Mr. Spradley. Mr. Spradley should not be held liable for the actions and behavior of counsel for Plaintiffs. Accordingly, the Court should not find Mr. Spradley in contempt of Court and should not require Mr. Spradley to reimburse Defendant for the fees and expenses incurred.

## BACKGROUND

On or about March 12, 2007, Mr. Spradley was informed that Defendant issued a subpoena for his testimony as a third-party witness in the above referenced matter. The notice apparently was delivered to Plaintiffs' counsel on March 7, 2007.

On or about March 13, 2007, Mr. Spradley contacted Plaintiffs' counsel by telephone and informed them that he did not intend to serve as a witness in the above referenced matter because doing so likely would require disclosure of information gathered or prepared in connection with a separate action against Defendant that was protected by legal privilege (both attorney work product and attorney-client). Plaintiffs' counsel attempted to convince Mr. Spradley to serve as a witness even though they could not explain how Mr. Spradley's interest and privilege would be protected nor how Plaintiffs' counsel would address the apparent conflict of interest resulting from their simultaneous representation of the Plaintiffs and Mr. Spradley.[1]

After further telephone conversations with Plaintiffs' counsel, on March 30, 2007, Mr. Spradley emailed Plaintiffs' counsel and specifically demanded that he be removed from the witness list in this matter and that the counsel seek to quash the subpoena.

According to Defendant's filing, on March 30, 2007, Plaintiffs' counsel agreed to change the date of the deposition from April 9, 2007 to April 4, 2007. (Defendant's Mem. at 2.) However, counsel for Plaintiff did not ascertain from Mr. Spradley whether he would be available for deposition on April 4, 2007. In fact, Mr. Spradley was not .available on April 4, 2007 due to a previously scheduled business appointment that could not be rescheduled without

---

[1] For a period of time, counsel for Plaintiffs represented Mr. Spradley with respect to employment discrimination issues arising out of his employment by Defendants. However, to the extent that the above referenced matter is not certified as a class action, counsel for Plaintiffs did not represent Mr. Spradley in this matter. At this time, counsel for Plaintiffs have withdrawn from representation of Mr. Spradley in any capacity due to conflicts of interest and conflicting views regarding the scope of the representation.

undue burden..

According to Defendant's filing, on May 10, 2007, counsel for Plaintiff agreed to change the date of the deposition to May 17, 2007. (Defendant's Mem. at 2.) However, counsel for Plaintiff did not ascertain from Mr. Spradley whether he would be available for deposition on May 17, 2007. In fact, Mr. Spradley had no idea that the deposition had been rescheduled until counsel for Plaintiff contacted him on the afternoon of May 16, 2007 and stated that the deposition was to be held the next morning. Mr. Spradley immediately informed Plaintiffs' counsel that due to previously scheduled personal and business appointments that could not be rescheduled on such short notice without undue burden, Mr. Spradley was not available for a deposition on May 17, 2007.

According to Defendant's filing, scheduling, rescheduling and/or canceling depositions of purported third-party witnesses is a "recurring pattern of behavior by Plaintiffs' counsel in this case." (Defendant's Mem. at 3-4.)

ARGUMENT

Mark M. Spradley is not a party in this matter. The Federal Rules of Civil Procedure provide that non-party testimony may be compelled in certain circumstances. However, a subpoena may be quashed or modified if it requires disclosure of privileged or other protected matter or where appearance would subject the witness to undue burden. (Fed. R. Civ. P. 45(c)(3)(A).) Mr. Spradley directed Plaintiffs' counsel to seek to quash the subpoena because it likely would require disclosure of privileged or other protected matter. In addition, Mr. Spradley notified Plaintiffs' counsel that he was not available on the specific dates scheduled for his appearance as they would place an undue burden on a non-party due to preexisting appointments that could not easily be rescheduled.

Despite this knowledge, counsel for Plaintiffs did not attempt to quash the subpoena and apparently failed to inform counsel for Defendant that Mr. Spradley was unavailable on the scheduled dates. Mr. Spradley cannot condone the actions of Plaintiffs' counsel, and based on the Defendant's representations, it appears that counsel for Plaintiffs exhibited similar behavior with respect to other purported third-party witnesses. Mr. Spradley, however, should not be held liable for the actions or inactions of counsel for Plaintiff. Given that Mr. Spradley could not contact counsel for Defendant directly, Mr. Spradley relied on counsel for Plaintiff to seek to quash the subpoena and/or modify the date to a mutually agreeable time. Apparently, Plaintiffs' counsel, for their own reasons, chose not to do so. Mr. Spradley should not now be subject to the imposition of sanctions such as contempt of Court or reimbursement of attorneys fees due to the actions and behavior of counsel for Plaintiff.

## CONCLUSION

For the foregoing reasons, Mark M. Spradley respectfully requests that the Court deny Defendant's motion for finding civil contempt against Mr. Spradley, and deny Defendant's request for reimbursement of attorney's fees and expenses from Mr. Spradley.

Dated: July 2, 2007

Respectfully submitted,

By: _____
Mark M. Spradley
Pro Se
2 Wisconsin Circle #700
Chevy Chase, MD 20815
(301) 346-5590

4

CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2007, a true and correct copy of the Plaintiffs' Third Party Witness' Memorandum of Points and Authorities in Opposition to Defendant's Motion For a Finding of Civil Contempt and Sanctions was mailed all of the lawyers in the case representing the Plaintiffs and Defendant as listed below.

Copy Mailed To:

Stephen A. Whinston, Esq.
Carey R. D'Avino
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

Steven M. Pavsner
Joseph, Greenwald & Laake, PA
6404 Ivy Lane, Suite 400
Greenbelt, MD 20779

Bruce E. Gerstein
Brett Cebulash
Archana Tomoshunas
Garwin Gerstein & Fisher LLP
1501 Broadway, Suite 1416
New York, NY 10036

Thomas S. Williamson, Jr.
Eric H. Holder, Jr.
Jeffrey G. Huvelle
Covington & Burling
1201 Pennsylvania Avenue, NW
Washington, DC 20004

By: _____
Mark M. Spradley
Pro Se
2 Wisconsin Circle #700
Chevy Chase, MD 20815
(301) 346-5590